FILED

2019 FEB 21 AM 8: 37

MIDDLE DISTRICT OF COURT
TAMPA, FLORIDA

**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

MITSUBISHI HITACHI POWER
SYSTEMS AMERICAS, INC.,
Movant,

Case No.
8:19 mc 17 36 JSS

v.

TECO ENERGY, INC.
Respondent.

_____/

**MOVANT, MITSUBISHI HITACHI POWER SYSTEMS
AMERICAS, INC.'S MOTION TO COMPEL COMPLIANCE WITH
SUBPOENA AGAINST RESPONDENT, TECO ENERGY, INC.**

Pursuant to Federal Rule of Civil Procedure 45(d), Movant, Mitsubishi Hitachi Power

Systems Americas, Inc. ("MHPSA"), by and through its undersigned counsel, herein requests

this Court Compel Respondent, TECO Energy, Inc. ("TECO") to comply with the *Subpoena To

Produce Documents, Information, Or Objects Or To Permit Inspection Of Premises In A Civil

Action* dated November 20, 2018 ("the Subpoena"), and in support of this motion states as

follows:

**I.    INTRODUCTION**

MHPSA has asserted a counterclaim for defamation against the plaintiff, Fluor

Enterprises, Inc. ("Fluor"), in the underlying litigation styled *Fluor Enterprises, Inc. v.

Mitsubishi Hitachi Power Systems Americas, Inc.,* 3:17-cv-00622-MHL ("Fluor Litigation")

currently pending in the Eastern District of Virginia. As explained more fully below, the

documents MHPSA seeks from TECO via the Subpoena are directly relevant to MHPSA's

counterclaim in the Fluor Litigation. The requested documents are probative of the issue of

TPA - 55393
$47.00

whether certain defamatory statements made by Fluor were taken into account by TECO and impacted TECO's relationship with MHPSA and/or its consideration of MHPSA's bid and proposal to provide a turbine supply package and related services to one of TECO's existing power plants. A copy of the Subpoena is attached hereto as "Exhibit A." Moreover, to alleviate concerns over disclosure of the trade secrets or confidential information of others, MHPSA has offered to limit the scope of the documents requested, as well as to have production occur subject to "Attorney's Eyes Only."

As reflected in the Order attached hereto as "Exhibit B," the discovery deadline in the Fluor Litigation is March 15, 2019. Although MHPSA has been diligent and acted in good faith in attempting to accommodate TECO's concerns relating to the Subpoena, the delay in production of these documents has prejudiced MHPSA as it is now in jeopardy of not receiving these documents by the current discovery deadline and thus potentially being precluded from using any relevant information received in the Fluor Litigation. Accordingly, because the documents requested are relevant, within the scope of discovery and substantially needed, this Court should order TECO to comply with the Subpoena and produce the requested documents before March 10, 2019.

## II.     STATEMENT OF RELEVANT FACTS

### a. MHPSA's Counterclaim in the Fluor Litigation

On October 16, 2017, MHPSA filed its Answer and Affirmative Defenses to Complaint, Counterclaim, and Jury Trial Demand in the underlying Fluor Litigation. In its counterclaim, MHPSA set forth a claim for business defamation based on certain defamatory statements made by Fluor's CEO to Fluor's shareholders and creditors related to the fitness of MHPSA's equipment and quality control procedures ("Counterclaim"). A copy of the Counterclaim is

attached hereto as "Exhibit C." Specifically, MHPSA's Counterclaim alleges in relevant part:

> 15. During an August 3, 2017, "earnings call" for Fluor's shareholders and creditors (the "Earnings Call"), David Seaton, CEO of Fluor Corporation and CEO of Fluor, provided a report on Fluor Corporation's Second quarter Consolidated Financial Results for 2017 on behalf of Fluor Corporation and its subsidiaries, including Fluor Enterprises. While providing this report, Mr. Seaton made the following statements of purported fact (the "Statements"):
>
>> All three projects, four if you include *the Brunswick project* that incurred a charge in 2015, had a fundamental problem. And the projects did not meet the original baseline assumptions due to improper estimating, craft productivity and *equipment issues.* All of these projects were bid in 2014 by the same pursuit team.
>>
>> In addition, all four projects *were based on next gen turbines or steam generators that were first of a kind for Fluor. The quality control and completeness of these turbines delivered to the site were not in line with our bid assumptions, and we are pursuing our options.* (emphasis added [in original])
>
> ***
>
> 18.   It is common knowledge in the power generation industry that MHPSA' turbines were used in the Brunswick Project mentioned in the Statements, such that references to the turbines used in the Brunswick Project are understood to be references to MHPSA.
>
> 19.   The Statements are false because (a) the quality control and completeness of the turbines was in line with all reasonable requirements and expectations for the Brunswick Project; (b) any equipment issues with the turbines were minor in nature, and did not cause Fluor's substantial financial losses or the "fundamental project" to which the Statements refer, and (c) the turbines on the Brunswick Project were not "next gen" or "first of a kind."
>
> 20.   At the time the Statements were published, Fluor had actual knowledge that the Statements were false as to MHPSA, or Fluor acted with reckless disregard for the truth of the Statements.
>
> ***

22.   *The Statements were defamatory because they impugned the quality of MHPSA' turbines, thus harming MHPSA' reputation in the power generation industry and deterring third parties from dealing with MHPS.*

23.   *The Statements have injured MHPS because numerous current and potential customers immediately contacted MHPS* following the Earnings Call to question MHPS regarding the Statements and *to inquire as to what were the issues with quality and completeness of MHPS' turbines.*

*See* Exhibit C. (Emphasis added).

As set forth in the above relevant allegations, the central element of the Counterclaim is the effect of Fluor's statements on MHPSA's reputation in the thermal power generation systems market, as well as what effect these statements had on MHPSA's relationships with current and potential customers both nationally and internationally. Given the relatively small number of available projects in the thermal power generation market, and extremely small number of similarly situated competitors to MHPSA, the negative impact that these statements had on any proposals or bids made by MHPSA, including those proposals and bids made to TECO, is of critical importance to the calculation of MHPSA's damages in the Fluor Litigation. Indeed, MHPSA was contacted by at least one other customer who relayed to MHPSA that Fluor was blaming its financial problems on MHPSA's turbines. *See* Excerpts of Deposition Testimony of Kent Rockaway, pg. 16, lines 2-25; pg. 17, lines 1-4, attached hereto as "Composite Exhibit D."

### *b.   The TECO Big Bend 1 & 2 Repowering Project*

In 2017, TECO solicited, and MHPSA and its competitors provided, bids for a turbine supply package and related services in connection with the proposed refurbishment of an combined cycle gas turbine/steam generator power plant, which was known as the Big Bend 1 & 2 Repowering Project (the "Big Bend" Project). TECO engaged the engineering firm Black and Veatch to assist in this proposal process. As testified to by MHPSA's Corporate Representative,

4

Kent Rockaway, Vice President of Commercial Operations, MHPSA submitted its proposal for the Big Bend Project in or around the third quarter of 2017. *See* Composite Exhibit D, pg. 185, lines 22-23. Despite the fact that the pricing MHPSA included in its proposal was "extremely aggressive" and below market level, in or around December 2017 (approximately four months after the defamatory statements were made by Fluor), MHPSA learned that its proposal for the Big Bend Project had not been accepted. *See id.* at pg. 186, lines 19-21; pg. 188, lines 6-9. Instead, the Big Bend Project was awarded to one of MHPSA's two competitors, General Electric ("GE"). *Id.* at pg. 186, line 20.

As was MHPSA's practice after not being selected during a bid process, it conducted a review of its proposal submission for the Big Bend Project in order to identify any "lessons learned" which could be applied to future proposals. *See* Composite Exhibit D, pg. 187, lines 5-14. During this review process, MHPSA learned from TECO's engineering advisor, Black & Veatch, that it had recommended TECO accept MHPSA's proposal. *See id.* at pg. 191, lines 22-25; pg. 194, lines 3-5. In addition, MHPSA was told by TECO's own representatives that the gas turbine equipment specified in MHPSA's proposal was more efficient than GE's. *Id.* at pg. 202, lines 10-16. Nevertheless, TECO did not award MHPSA the contract. TECO's rejection of MHPSA's proposal came within months of Fluor's defamatory statements--which were publicly known in the thermal power generation market.

### c. The Subpoena and Narrowing of Requested Documents.

On or about December 20, 2018, MHPSA served TECO with the Subpoena in the Fluor Litigation for the purpose of determining what effect the defamatory statements made by Fluor on August 3, 2017 had on TECO's subsequent evaluation and rejection of MHPSA's bid. To make this determination, MHPSA's counsel in the Fluor Litigation sought a number of

5

categories of documents relevant and necessary to making this determination, which necessarily

included documents related to TECO's evaluation of proposals and bids other than the MHPSA

bid.   These documents specifically included:

     1.  A copy of the solicitation issued for the [Big Bend] Project.

     2.  All responses, including but not limited to proposals or bids, received by [TECO] for the [Big Bend] Project.

     3.  All internal TECO correspondence referring or relating to any bid or proposal submitted for the [Big Bend] Project.

     4.  All documents relating, pertaining, or associated with any evaluation of any bid or proposal received for the [Big Bend] Project.

     5.  All documents relating, pertaining, or associated with the ranking or scoring of bids and/or proposals received for the [Big Bend] Project.

     6.  All notes, transcripts, and/or meeting minutes from any minutes relating, pertaining, or associated with the evaluation or ranking of any bids or proposals received for the [Big Bend] Project.

     7.   All documents relating, pertaining, or associated with your evaluation of MHPSA's bid for the [Big Bend] Project.

     8.  All documents considered by you in your evaluation of MHPSA's bid for the [Big Bend] Project.

     9.   All documents relating, pertaining, or evidencing reasons why MHPSA was not selected for the [Big Bend Project].

     10.   All internal communications between any TECO employees, agents, or other representatives concerning the evaluation and/or rejection of MHPSA's bid for the [Big Bend] Project.

     11.   All documents evidencing whether, in making your evaluation of bids for the [Big Bend] Project, you considered statements made by Fluor in an August 3, 2017 "earnings call" regarding the Brunswick Project.

     12.   All correspondence between you and Fluor relating or pertaining to MHPSA or the Brunswick Project.

     13.  All correspondence between you and any other entity relating or pertaining to MHPSA or the Brunswick Project.

*See* Exhibit A.

Following service of the Subpoena, MHPSA's counsel in the Fluor Litigation became aware of confidentiality concerns raised by TECO and on January 11, 2019, offered to limit and revise the scope of the Subpoena to address some of TECO's confidentiality concerns. Specifically, MHPSA offered to remove paragraphs 2, 3, and 4 cited above from the Subpoena and limit or revise all remaining document requests. A copy of the correspondence from MHPSA's counsel in the Fluor Litigation to TECO (the "Subpoena Revisions) is attached hereto as "Exhibit E." The offered revisions/limitations are as follows:

> 1. A copy of the solicitation issued for the [Big Bend] Project's turbine supply package bid by MHPSA.
>
> 5. All documents relating, pertaining, or associated with the ranking, scoring, evaluation and/or comparison *of MHPS[A]'s bid and/or proposal* to the bids and/or proposals received by others for the [Big Bend] Project's turbine supply package.
>
> 6. All notes, transcripts, and/or meeting minutes from any minutes relating, pertaining, or associated with the evaluation or ranking *of MHPS[A]'s bids or proposals* received from the [Big Bend] Project's turbine supply package.
>
> 7. All documents relating, pertaining or associated with your evaluation *of MHPSA's bid* for the [Big Bend] Project's turbine supply package.
>
> 8. All documents considered by you in your evaluation *of MHPSA's bid* for the [Big Bend] Project's turbine supply package.
>
> 9. All documents relating, pertaining, or evidencing reasons *why MHPSA was not selected* for the [Big Bend] Project's turbine supply package.
>
> 10. All internal communications between any TECO employees, agents, or other representatives concerning the evaluation and/or rejection *of MHPSA's bid* for the [Big Bend] Project's turbine supply package.

> 11.   All documents evidencing whether, in making your evaluation or bids for the [Big Bend] Project"s turbine supply package by MHPSA and others, *you considered statements made by Fluor in an August 3, 2017 "earnings call"* regarding the Brunswick Project.
>
> 13. All correspondence between you and any other entity relating or pertaining to Brunswick Project.

*See* Exhibit E.  (Emphasis added).

In addition to the above-noted deletions and revisions to limit the Subpoena to documents related to MHPSA's bid only, MHPSA has offered to make all responsive documents subject to a protective order and under a designation of "Attorneys Eyes Only" to further address TECO's concerns. *Id.*  On January 11, 2019, TECO's counsel responded to MHPSA's offer to limit the Subpoena. A copy of TECO's correspondence is attached hereto as "Exhibit F." While TECO agreed to some of the proposed revisions, it continued to reject others and neither produced any documents nor offered any alternative solutions.

## III.   ARGUMENT

### a.   Legal Standard

"[I]t is well-settled that the scope of discovery under a subpoena [issued pursuant to Rule 45] is the same as the scope of discovery under Rule 26(b) and Rule 34." *Kwalwasser v. New York Life Ins. Co.*, No. 8:06-CV-1808-T-27TBM, 2007 WL 9723881, at *1 (M.D. Fla. June 14, 2007). Federal Rule of Civil Procedure 26 allows parties to engage in discovery of any relevant, non-privileged material that is admissible or reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Courts construe relevancy "broadly to encompass any matter that bears on, or that could reasonably lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351

(1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501(1947)); *see also Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 430 (M.D. Fla. 2005) (stating the "scope of discovery is governed by Rule 26, which allows 'discovery regarding any matter, not privileged, which is relevant to the subject matter of the pending litigation.'"). Importantly, the information sought need not be admissible in an evidentiary sense but merely "reasonably calculated to lead to the discovery of admissible evidence." *Hill v. Emory Univ.*, 346 Fed. Appx. 390, 392 (11th Cir. 2009); *see also Spano v. Satz*, 09-60255-CIV, 2010 WL 11515694, at *3 (S.D. Fla. Jan. 29, 2010) (referring to the scope of discovery under Rule 26 as "broad").

> **b.     The documents requested by the Subpoena and the Subpoena Revisions are highly relevant to the Fluor Litigation and reasonably calculated to lead to the discovery of admissible evidence.**

Pursuant to an order, the Court in the Fluor Litigation is applying Texas law to MHPSA's Counterclaim therein. Under Texas law, the elements that a defamation plaintiff must prove are that (a) the defendant published a false statement of fact; (b) the statement defamed the plaintiff; (c) the defendant acted with actual malice, if the plaintiff is a public figure or a public official, or negligently, if the plaintiff is a private individual; and (d) the statement proximately caused damages. *See Anderson v. Durant*, 550 S.W.3d 605, 617-18 (Tex. 2018). A statement is defamatory if it tends to injure one's reputation, exposing one to public hatred, contempt, or ridicule, or financial injury, or to impeach any person's honesty, integrity, virtue, or reputation. *Montemayor v. Ortiz*, 208 S.W.3d 627, 651 (Tex. App.—Corpus Christi 2006, pet. denied). It is well settled that corporations, like people, have reputations and may recover for harm inflicted on them. *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 149 (Tex. 2014).

In the Fluor Litigation, while MHPSA's defamation claim arises from statements made

9

by Fluor in relation to the Brunswick Project, the primary issues are what effect and what damages those statements had and caused in relation to MHPSA's reputation in the thermal power generation market overall.

Accordingly, the relevancy of the Subpoena and Subpoena Revisions arise from the effect Fluor's defamatory statements had in relation to MHPSA's reputation with TECO, including the evaluation of MHPSA's proposals and bids submitted to TECO for the Big Bend Project. As discussed above, the scope of discovery, as permitted by Rule 26 and applied to TECO via Rule 45, allows MHPSA to seek information that is *relevant* to *any* claim or defense. As the Court can see from the Subpoena and Subpoena Revisions, all requested documents, records, and correspondence, relate to how TECO evaluated, ranked, or scored MHPSA's bid and what effect the Fluor statements had in regards to this evaluation. *See* Exhibits A and E. Considering that 1) MHPSA was contacted by other customers in the power generation market in regards to those entities' concerns about the nature and effect of Fluor's defamatory statements, 2) MHPSA submitted a very competitive bid with pricing below market level, 3) TECO's engineering advisor recommended TECO accept MHPSA's bid, 4) TECO acknowledged that MHPSA's equipment was more efficient than that of GE, and 5) TECO's rejection of MHPSA's bid came in close proximity to Fluor's statements, the documents requested in both the Subpoena and the Subpoena Revisions are of critical importance for MHPSA in establishing one of the elements of its Counterclaim as well as potential damages— injury to reputation. Accordingly, this Court must find that the documents requested by MHPSA are relevant under Rule 26 and order the documents be produced prior to March 15, 2019.

**c.      The Subpoena Revisions seek documents related to a comparative evaluation of the MHPSA Bid.**

As discussed in the Statement of Facts above, in an attempt to address any confidentiality concerns TECO might have and in an attempt to facilitate the timely production of responsive documents, MHPSA considerably narrowed the scope of the Subpoena by virtue of the Subpoena Revisions and has extended the offer of a stipulated protective order, restricting disclosure of any documents produced by TECO to counsel. The narrowed scope of the Subpoena Revisions limits the documents requested to those attributable to the comparative evaluation of the MHPSA bid in relation to the other bids, and not the full text and information from its competitors. Again, these documents are both relevant to MHPSA's Counterclaim and necessary to establish injury to MHPSA's reputation, and further, MHPSA does not have the ability to obtain this information elsewhere.

**WHEREFORE,** MHPSA requests this Court compel TECO to produce the documents requested pursuant to the Subpoena and modified via the Subpoena Revisions before March 10, 2019, and grant such other relief that this Court deems proper and just.

Dated: February 20, 2019

Respectfully submitted,

/s/ Natalie P. Thomas
Natalie P. Thomas
Florida Bar No. 147680Quarles & Brady LLP
101 E. Kennedy Blvd., Suite 3400
Tampa FL  33602
Telephone: (813) 387-0300
Fax: (813) 387-1800
natalie.thomas@quarles.com
nichole.perez@quarles.com
lynda.dekeyser@quarles.com
DocketFL@quarles.com

*Attorneys for Movant Mitsubishi Hitachi Power Systems Americas, Inc.*

QB\56110464.2